IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| GARY HIRSH, | ) | |
| Plaintiff, | ) ) ) | 8:06CV13 |
| v. | ) ) | |
| FERNANDO LECUONA and JOHN ALBIN, | ) ) ) | MEMORANDUM AND ORDER |
| Defendants. | ) ) ) | |

This matter is before the court on defendants' motion for summary judgment. Filing No. 41. Plaintiff filed a complaint alleging violations of 42 U.S.C. § 1983, on the basis that the defendants violated his First Amendment rights by disciplining and firing him. Filing No. 1. Defendants contend that the claims against them in their individual and official capacities must be dismissed.

**Facts**

Plaintiff, Gary Hirsh ("Hirsh"), became employed by the Nebraska Department of Labor in 1972. He was subsequently appointed Executive Director of Safety and Labor Standards, reporting to the defendant, Fernando "Butch" Lecuoma ("Lecuona"), Commissioner of Labor of the State of Nebraska. Filing No. 1, Complaint, ¶ 6. The other defendant, John Albin ("Albin"), at all times relevant to this matter, was the Executive Director and Legal Counsel for the Nebraska Department of Labor ("DOL"). Complaint, ¶ 5.

On December 2, 2004, Hirsh was removed from work by his physician because of stress on the job. Hirsh was treated by his physician and by a psychologist. Filing No. 50, Index (continued) in Opposition to Motion for Summary Disposition ("Filing No. 50"), Exhibit 2, Deposition Excerpt of John Engler at 7:13-20; 10:25-11:18. On January 25, 2005, Hirsh notified Lecuona of his health status and gave an expected return date of March 9, 2005. Filing No. 50, Deposition Exhibit No. 1, January 25, 2005 e-mail from Hirsh to Lecuona with

Lecuona's response. On March 8, 2005, Hirsh's physician released Hirsh to return to work. Filing No. 50, Deposition Exhibit No. 14.

On March 9, 2005, Hirsh returned to work and sent an e-mail to Lecuona and others notifying them of his return that morning. Filing No. 43, Index in Support of the Motion for Summary Disposition (Filing No. 43), Exhibit B, March 9, 2005 e-mail from Hirsh. Later that day, Lecuona e-mailed Hirsh indicating that they needed to meet regarding the workload division between Hirsh and Bill Hetzler, the Acting Executive Director of Safety & Labor Standards. Filing No. 43, Exhibit C, March 9, 2005 e-mail exchange between Lecuona and Hirsh.

On March 14, 2005, three members of Hirsh's staff took vacation or personal leave time to appear and testify at a hearing of the Business and Labor Committee of the Nebraska Legislature. Complaint, ¶ 7. On March 14, 2005 at 5:55 p.m., Albin sent an e-mail to Hirsh and to Bill Hetzler, referencing the DOL's Legislative Policy and criticizing their failure to notify Albin or Lecuoma that the staff members would be appearing before the legislative committee. Filing No. 43, Exhibit D, March 14 e-mail to Hirsh from Albin.

On March 15, 2005, Hirsh and Lecuona began an e-mail exchange regarding Albin's criticisms. Hirsh began by indicating that he was out on personal leave on March 14, and requested to know who was at the hearing and what portion of the DOL's Legislative Policy was violated. Filing No. 50, Deposition Exhibit 7, March 15, 2005 e-mail to Albin from Hirsh. Lecuona responded that the "only agency personnel that should be testifying on agency bills or bills impacting the agency are the Commissioner, Legal Counsel, director's or other designated staff if asked." Filing No. 50, Deposition Exhibit 8, March 15 e-mail between Lecuona and Hirsh. Hirsch again requested to know what part of the Legislative Policy was violated. *Id.* Lecuona responded:

> Obviously you don't get it . . . and we have been through his before. Any time professional staff testify differently than the 'official position of the agency' its [sic] problematic. . . . The fact that they didn't give us the courtesy of informing this office that they would be testifying is harmful to the

2

> legislative process. . . . The policy outlines the process and the intent to reserve for the Commissioner of Labor and/or his/her designee(s) responsibility of determining and expressing the official legislative policy of the agency.

Filing No. 50, Deposition Exhibit 9, March 15 e-mail between Lecuona and Hirsh.

Hirsh responded to Lecuona indicating that he believed that he didn't have, "the right to ask our employees their purpose or be responsible for them when taking Annual Leave. In addition, also I don't believe anyone violated any Legislative Policy if they testified on their own behalf as a private citizen." *Id.* Additionally, Hirsh indicated that "This Agency's Commissioner and upper management, has in the past and since my return on March 9th, continued to totally stress me out to the point of making me ill. . . . I will be forwarding you a sick leave slip for the remainder of the day." *Id.* Hirsh did not return to work, citing medical reasons, and was subsequently terminated on July 12, 2005. Filing No. 43, Exhibits O, R & X.

On March 17, 2005, Lecuona sent Hirsh two memoranda. The first notified Hirsh of the need for documentation related to his prior and current sick leave for job-related stress. The memorandum indicated that "[f]ailure to present the requested and required documentation could lead to possible disciplinary action and/or non-approval of your return to work." Filing No. 43, Exhibit H, March 17, 2005 Memorandum to Hirsh.

The second March 17, 2005 memorandum from Lecuona to Hirsh, titled "Notice of Allegations" and set a meeting for March 31, 2005 to address certain allegations regarding Hirsh. The allegations included:

1. Failure to notify the Commissioner of Labor in an appropriate manner of your medical release to return to work and the manner of your actual notification of your return to work. Your e-mail of March 9, 2005, 8:59 am from Omaha notifying me of your return was not the appropriate method for an individual in your position as Director, Office of Safety & Labor Standands.

2. Failure to provide documentation/correspondence from your physician that substantiates your release to return to work. You returned to work without presenting the required release.

3. In addition e-mails (March 9, 2005, 1:55 p.m.; March 11, 2005, 10:27 a.m.; March 15, 2005, 10:50 a.m.; March 15, 2005, 12:12 p.m.; March 15, 2005, 12:28 p.m.) regarding Legislative Policy, you expressed a tone and attitude contrary to the Agency's positions and detrimental to the maintenance of satisfactory working relationships. The demeanor of these e-mails is counterproductive and unacceptable.

4. Your e-mails, as noted in paragraph 1 and 3 above, include language which can be considered insubordinate, in particular the following responses: "You're the Commissioner"; "...please answer the second part of my question below . . ." and "It's unbelievable what you have just said to me in this correspondence and other correspondence in the past. . . ."

5. Your support of activities of the staff of the Office of Safety and Labor Standards in areas that directly affect this Agency's performance, function, or official position is not acceptable. As the Director of the Office of Safety & Labor Standards, you should be in full support of Agency goals and positions and you should be advocating such goals and positions to Safety staff. Your failure to notify me or this office of staff activities in opposition to the Agency's goals and positions is contrary to the maintenance of satisfactory working relationships and adversely affects the Agency's performance and/or function.

Filing No. 43, Exhibit I, March 17, 2005 Memorandum from Lecuona and Hirsh, p. 1-2. On March 25, 2005, Lecuona issued to Hirsh an Amended Notice of Allegations, which added:

6. You worked only a few days following your return before again informing me that the stress of your job was too much and you were leaving work. You have now submitted a second doctor's letter stating that you will be off work for an indefinite period of time due to stress. Your position as an Executive Director is critical to the successful operation of this agency and cannot go unmanned indefinitely. You have now been absent from work for four months with no end in sight to your absence. Your continued absences jeopardize the ability of the agency to perform its necessary functions.

Filing No. 43, Exhibit M, March 25, 2005 Memorandum of Amended Notice of Allegations.

On March 31, 2005, Lecuona, Hirsh and Thomas Ukinski, an attorney with the DOL, met. Hirsh recorded the meeting.[1] At the meeting, Lecuona asserted that the staff members did not have the right to testify to the Legislature without the Commissioner's approval, and that Hirsh should have denied the staff members' leave requests because

---

[1] The parties have stipulated that a true and accurate transcription of the meeting is submitted as Filing No.43, Exhibit BB.

they planned to testify, even if they planned to testify as private individuals.[2] Filing No. 43, Exhibit BB, p. 4-5.  Hirsh responded that it was his belief that Lecuona's unwritten policy was not legal and that he could not prevent staff members from testifying as private citizens by denying them annual leave time.  *Id.*

On July 1, 2005, Lecuona issued to Hirsh another notice of disciplinary action.  Filing No. 43, Exhibit V.  On July 12, 2005, Lecuona issued to Hirsh a Notice of Termination of employment referencing the disciplinary actions beginning with the March 17, 2005 Notice of Allegations.  Filing No. 43, Exhibit X.

Hirsh filed this action alleging that the defendants violated 42 U.S.C. § 1983 in both their official and individual capacities and requesting damages for lost wages and fringe benefits, compensatory damages for humiliation, pain, suffering, and emotional distress, punitive damages, and reinstatement.  Filing No. 1, Complaint.

In response to the defendants' prior motion to dismiss, the court dismissed Hirsh's claim for monetary damages against the defendants in their official capacities, but denied the motion to dismiss with respect to the claims for declaratory and injunctive relief and the claims against the defendants in their individual capacities.  Filing No. 19, Memorandum and Order.  The defendants now move for summary judgment on all counts, which the court now denies.

**Standard of Review**

On a motion for summary judgment, the question before the court is whether the record, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Mansker v. TMG Life Ins. Co.*, 54 F.3d 1322,

---

[2] The policy as stated by Lecuona is in direct contradiction to the DOL's written policy which provides that the intent of the policy is to "reserve for the Commissioner of Labor and/or his/her designee(s) responsibility of determining and expressing the official legislative policy of the agency."  Filing No. 50, Deposition Exhibit 6, Nebraska Workforce Development, Department of Labor, K8-Legislative Policy, dated December 2004. Additionally, the policy specifically provides that "Nothing in this policy is intended nor should be interpreted to limit any employee's right to express themselves as an individual."  *Id.*

1326 (8th Cir. 1995). Where unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate. *Id.*

The burden of establishing the nonexistence of any genuine issue of material fact is on the moving party. Fed. R. Civ. P. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Therefore, if defendant does not meet its initial burden with respect to an issue, summary judgment must be denied notwithstanding the absence of opposing affidavits or other evidence. *Adickes*, 398 U.S. at 159-60; *Cambee's Furniture, Inc. v. Doughboy Recreational Inc.*, 825 F.2d 167, 173 (8th Cir. 1987).

Once a defendant meets its initial burden of showing there is no genuine issue of material fact, the plaintiff may not rest upon the allegations of his or her pleadings but rather must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. *See* Fed. R. Civ. P. 56(e); *Chism v. W.R. Grace & Co.*, 158 F.3d 988, 990 (8th Cir. 1998). The party opposing the motion must do more than simply show that there is some metaphysical doubt as to the material facts; he or she must show "there is sufficient evidence to support a jury verdict" in his or her favor. *Id.* Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Facts are viewed in the light most favorable to the nonmoving party, "but in order to defeat a motion for summary judgement, the non-movant party cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." *Carter v. St. Louis University,* 167 F.3d 398, 401 (8th Cir. 1999); *Ghane v. West,* 148 F.3d 979, 981 (8th Cir. 1998). In ruling on a motion for summary judgment, a court must not weigh evidence or make credibility determinations. *Kenney v. Swift Transp. Co.*, 347 F.3d 1041, 1044 (8th Cir. 2003).

**Discussion**

To establish a prima facie case of retaliation, a plaintiff must allege and prove that: (1) he engaged in activity protected by the First Amendment; (2) the defendant took an adverse employment action against him; and (3) the protected conduct was a substantial or motivating factor in the defendant's decision to take the adverse employment action. *Davison v. City of Minneapolis*, 490 F.3d 648, 655 (8th Cir. 2007), *citing Mt. Healthy City Sch. Dist. v. Doyle,* 429 U.S. 274, 287 (1977).  If the plaintiff meets this burden, the burden shifts to the defendant to demonstrate that the same employment action would have been taken in the absence of the protected activity.  *Id.*

*Activity Protected by the First Amendment*

The First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern. *Garcetti v. Ceballos*, 547 U.S. 410, 126 S. Ct. 1951, 1957, *citing Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205,* 391 U.S. 563, 568 (1968).  Hirsh alleges he was terminated in retaliation for exercising his First Amendment right to free speech. *See, e.g., Rankin v. McPherson*, 483 U.S. 378, 383 (1987) ("It is clearly established that a State may not discharge an employee on a basis that infringes that employee's constitutionally protected interest in freedom of speech"). Thus, the court must determine whether Hirsh spoke (1) as a citizen and (2) addressed a matter of public concern.  *Garcetti*, 126 S. Ct. at 1957.

1.  Was Hirsh speaking as a citizen?

First Amendment protection applies only to employees who make public statements outside the course of performing their official duties. *Garcetti*, 126 S. Ct. at 1961.  When a public employee speaks pursuant to employment responsibilities, here is no protection. *Id.*  In *Garcetti*, a deputy district attorney alleged he was fired for writing a memo in which he recommended a case be dismissed based on purported government misconduct.  The Supreme Court dismissed the argument that the deputy district attorney was acting as a

7

citizen when he wrote his memo, instead finding it was written pursuant to his official duties. *See Garcetti*, 126 S. Ct. at 1960.

The defendants argue that Hirsh was speaking as an employee in the course of his supervisory duties as an Executive Director and that Hirsh's duties included acting as a liaison between his staff and the Commissioner. The defendants further argue that the statements made by Hirsh were an attempt to defend his failure to follow DOL policy, not a public comment on the validity of the DOL's policies and procedures.

Hirsh argues he was not acting as a supervisor when he protested Lecuona's unwritten policy and, in fact, he did not have to speak out regarding the policy. Lecuona stated in the July 1, 2005 Notice of Disciplinary Action that "The April 14, 2005 Notice of Discipline did not discipline you for violations of the agency legislative policy by you or members of your staff. . . your disagreement with my view on that issue is irrelevant at this time." There is no evidence that Hirsh's official duties as Executive Director of Safety and Labor Standards included setting the DOL legislative policies. *See Lindsey*, 491 F.3d at 898 (holding that there was no evidence that plaintiff's duties as public works director even arguably included Sunshine law compliance, thus, the plaintiff's speech critical of the city council's alleged noncompliance was made as a citizen.). Therefore, there exists a genuine question of fact regarding whether Hirsh was acting as part of his official duties or as a private citizen when he made the statements.

2.  <u>Did Hirsh address a matter of public concern?.</u>

The Eighth Circuit has stated that "[S]traightforward criticism of government officials and policy, . . . falls squarely within the meaning of 'speech on a matter of public concern.'" *Casey v. City of Cabool*, 12 F.3d 799, 802 (8th Cir. 1993). In 1986, the Ombudsman of the Office of the Public Counsel in Nebraska recognized the need for public comment from state employees regarding proposed legislation. Filing No. 50, Deposition Exhibit 22, October 29, 1986 Memorandum from Marshall Lux to all Senators. The policy specifically addressed the need to avoid infringing upon the freedom of speech rights of public

8

employees. *Id.* at p. 5. Additionally, the policy specifically indicates that "An agency of state government may not establish a policy which precludes its employees from communicating with legislators and members of the legislative staff for the purpose of expressing their (the employees') own personal views, concerns or complaints regarding any matters, including matters pertaining to agency business." *Id.* at p. 5-6. Further, the policy states that "An agency may not unreasonably deny vacation leave to employees who need such leave in order to visit legislators or members of the legislative staff or to appear at legislative hearings." *Id.* at 7. In this case, Hirsh's criticism that Lecuona's unwritten policy violated the DOL's written policy and the staff members' free speech rights is speech on a matter of public concern.[3] The court finds that Hirsh's objections the Commissioner attempts to prohibit testimony by DOL employees is, as a matter of law, speech on a matter of public concern.

### *Substantial or motivating factor*

The defendants argue Hirsh was fired because of his failure to return to work, not for his statements regarding the written and unwritten legislative policy of the DOL. Specifically, the defendants argue that Hirsh's continued employment hinged on his return to work, not on the "legislative issues." The defendants further argue that the DOL determined, contrary to the medical opinion of Hirsh's doctors, that Hirsh no longer satisfied the qualifications necessary for the position, because at the time Hirsh was unable to perform due to severe stress due to interpersonal relationships. Exhibit U.

The court determines that a genuine question of fact exists as to whether Hirsh's statements were a substantial or motivating factor in his termination. The March 17, 2005 Notice of Allegation, the March 25, 2005 Amended Notice of Allegations, and the July 12,

---

[3] Additionally, the parties agree that the fact that the speech was made privately by the plaintiff does not take the speech out of the First Amendment context. *Givhan v. Western Line Consol. Sch. Dist.*, 439 U.S. 410, 415 -16 (1979); *Campbell v. Ark. Dept. of Corr.*, 155 F.3d 950, 959 (8th Cir. 1998) ("Complaints to superiors or private communications with an employer about matters of public concern are also protected under the first amendment"); *Casey*, 12 F.3d 799 (city fire and police dispatcher wrongfully discharged for making private statements that criticized city officials and policies).

9

2005 termination notice, all reference the criticism of Lecuona's legislative policy as a reason for his termination. Additionally, the timing of the Notice of Allegation, just two days after the criticism creates an issue of fact at to whether Hirsh's speech was a substantial or motivating factor.[4] An employee can establish a causal link between his protected activity and the adverse employment action through "the timing of the two events." *Hite v. Vermeer Mfg. Co.,* 449 F.3d 858, 865 (8th Cir. 2006) *citing Eliserio v. United Steelworkers of Am.*, 398 F.3d 1071, 1079 (8th Cir. 2005). "A pattern of adverse actions that occur just after protected activity can supply the extra quantum of evidence to satisfy the causation requirement." *Hite*, 449 F.3d at 865, *citing Smith v. Allen Health Sys., Inc.,* 302 F.3d 827, 832 (8th Cir. 2002).

**Qualified Immunity**

Qualified immunity shields governmental officials from personal liability if their actions, even if unlawful, were nevertheless objectively reasonable in light of the clearly established law at the time of the events in question. *Anderson v. Creighton*, 483 U.S. 635, 638-41 (1987). Public officials are entitled to qualified immunity in suits against them in their individual capacity as long as their actions do not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The qualified immunity analysis is a two-step process. *Saucier v. Katz*, 533 U.S. 194, 200 (2001); *Whisman v. Rinehart*, 119 F.3d 1303, 1309 (8th Cir. 1997). "The threshold question is whether the plaintiff has alleged the violation of a constitutional right." *Id.* If so, the court determines whether that right was "clearly established" at the time of the alleged violation. *Id.* This is a flexible standard and is to be applied to a particular defendant's conduct based on the applicable legal principles. *Id.* The First Amendment right of public employees to comment on matters of public concern without fear of reprisal has long been established. *See, e.g., Connick v. Myers*,

---

[4] Additionally, Lecuona testified that the March 17, 2005 notification reference to tone and attitude in e-mails and e-mails which could be considered insubordinate, all relate to the Albin, Lecuona and Hirsh e-mails in which Hirsh objected to the DOL's unwritten policy to bar staff members from testifying.

10

461 U.S. 138, 142 (1983); *Pickering v. Board of Educ.*, 391 U.S. 563, 574 (1968).  In this case, the evidence shows that as early as 1986, the DOL was on notice that it could not prohibit employees from testifying to the Legislature, nor could they deny annual leave to those wanting time off to testify.  Filing No. 50, Deposition Exhibit 22.

If the speech is on a matter of public concern, the court then balances the employee's right to free speech against the public employer's interests.  *Pickering*, 391 U.S. at 568.  This second step of the analysis is more difficult.  If, as the plaintiff alleges, he was terminated for engaging in protected speech, the plaintiff's interests "as a citizen, commenting on matters of public concern" must be balanced against the defendants' interests, as a public employer, "in promoting the efficiency of the public services it performs through its employees."  *Pickering*, 391 U.S. at 568.

The Eighth Circuit has held that when *Pickering's* fact-intensive balancing test is at issue, the asserted First Amendment right can hardly be considered "'clearly established' for purposes of the *Harlow* qualified immunity standard."  *Grantham v. Trickey*, 21 F.3d 289, 293 (8th Cir. 1994) (*quoting Buzek v. County of Saunders*, 972 F.2d 992, 997 (8th Cir. 1992)).  However, the critical inquiry in determining if the free speech right is clearly established is whether the defendants have put the *Pickering* balancing test at issue by producing evidence that the speech activity had an adverse effect on the efficiency of the public employer's operation.  *Grantham*, 21 F.3d at 294.

A public employee's exercise of free speech affects the efficiency of the public employer's service when it affects the morale of the work force and damages the program's reputation.  *Bartlett*, 972 F.2d at 917.  In accordance with *Grantham* and *Bartlett*, evidence must be offered to support the argument that the statements had a negative effect on the work place.  "[A] public employer must, with specificity, demonstrate the speech at issue created workplace disharmony, impeded the plaintiff's performance or impaired working relationships."  *Lindsey v. City of Orrick, Missouri,* 491 F.3d 892, 900 (8th Cir. 2007), *citing Washington v. Normandy Fire Prot. Dist.*, 272 F.3d 522, 527 (8th Cir.2001).  In *Sexton v.*

11

*Martin*, 210 F.3d 905 (8th Cir. 2000), two public employees were discharged after they went to city hall and disclosed to the public they believed the city had been engaging in unlawful wiretapping. *Id.* at 908. In its attempt to trigger the *Pickering* balancing test, the city provided testimony that the report of illegal activity had adversely affected employee morale and had damaged "the Department's reputation and created significant political problems." *Id.* at 912.  The Eighth Circuit held these simple, unsupported allegations of disruption were insufficient to trigger *Pickering*.  *Id.; see also Kincade v. City of Blue Springs*, 64 F.3d 389, 398-99 (8th Cir. 1995) (finding mere assertion that contested speech "caused the City problems" and "adversely affected the efficiency of [the] City's operations and substantially disrupted the work environment," with no supporting evidence, insufficient to trigger *Pickering*); *Barker v. City of Eldon*, 215 F.3d 1134, 1140 (8th Cir. 2000) (reversing summary judgment where the city never "articulated how [the public employee's] speech actually, or even potentially, disrupted its governmental functions").

The defendants argue that Hirsh's speech had an adverse impact on his relationship with his supervisors and the agency's relationship with the legislature. Exhibit EE, 47:3-25. The defendants also argue Hirsh's speech impacted his ability to perform his duties and to be an advocate on behalf of the DOL and its policies. However, the defendants have not provided any evidence that Hirsh's assertions to Lecuoma and Albin had an actual detrimental impact on the DOL; thus, they are not entitled to qualified immunity.

THEREFORE, IT IS ORDERED that the defendants' motion for summary judgment, Filing No. 41, is denied.

DATED this 7th day of February, 2008.

BY THE COURT:

s/Joseph F. Bataillon
JOSEPH F. BATAILLON
Chief United States District Judge